United States District Court
Southern District of Texas
**ENTERED**
January 12, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 4:21-CR-15 |
| | § | |
| | § | |
| RAFAEL ROMERO SEGURA. | § | |

## **ORDER**

Pending before the Court is Defendant Rafael Segura's ("Defendant" or "Segura") Motion to Suppress (Doc. No. 14). The United States of America ("Government") responded in opposition to the motion. (Doc. No. 16). This Court held a hearing and took testimony on the Motion. After reviewing the Motion, the testimony, the arguments, and the applicable law, the Court denies the Motion.

### I.     Factual Background

On September 4, 2020, Thoan Van Cao ("Cao") was sitting in his parked truck with an attached trailer that carried landscaping equipment. At approximately 2:15 p.m., a black Chevrolet SUV parked behind his truck. A Hispanic male, carrying a handgun, emerged from the driver's side of the SUV and ordered Cao to exit his vehicle. When Cao exited the vehicle, the Hispanic male pointed the gun at his head and told the passenger in the SUV, John Duncan ("Duncan"), to get in Cao's truck. Allegedly, Duncan later identified the Hispanic male to be Defendant Rafael Romero Segura.[1] Once Duncan got in Cao's truck, Defendant ran back to the SUV, and both vehicles drove off.

---

[1] Except for the factual statements pertaining to the actual suppression motion, the recitations are merely what the Government has pleaded that it intends to prove and are not findings of the Court.

Cao reported his wallet, phone, and truck as stolen. Meanwhile, shortly after departing the scene, Defendant and Duncan attempted to move the trailer from Cao's truck to the SUV; however, they had difficulties securing the trailer to the SUV. At approximately 3:30 p.m., Maikel Lopez ("Lopez"), an onlooker, observed their struggles and offered to assist them. As he approached the vehicle, Defendant began shooting at him with the handgun. Lopez, who has a license to carry, took cover, retrieved his weapon, and returned fire. In the process, Defendant was shot by Lopez. After Defendant was wounded, he and Duncan rushed into the SUV and drove away, leaving behind a firearm, Cao's truck, and the trailer.

Defendant and Duncan drove to Defendant's wife's, Katherine Henchley ("Henchley"), workplace. Henchley got into the SUV and drove Defendant to Southwest Memorial Hermann Hospital. At approximately 4:50 p.m., officers received the report of a wounded patient from the hospital and went to the hospital to investigate.

Upon arriving at the hospital, officers found defendant in an emergency room. They learned that he was awaiting transportation from Southwest Memorial Hermann to Memorial Hermann in the Medical Center for further treatment. Officers also noticed a hospital bag containing Defendant's belongings on a counter near his bed in the emergency room. The officers observed Henchley use the same bag to carry certain items belonging to her. They also noticed Henchley carrying a black backpack. While one officer remained in the hospital, the other officer spoke with hospital security and managed to ascertain the location of the SUV. Upon inspection of the SUV, the officer saw blood in the vehicle.

When Defendant left the emergency room to be transported to another hospital. Henchley took the hospital bag and the black backpack. Officer Abutaleb drove Henchley to the Medical Center. Upon arriving to the Medical Center, Abutaleb interviewed Henchley. During the

interview, Henchley gave Abutaleb permission to search Defendant's backpack, where she kept her cellphone, as she explained that her phone would demonstrate when Defendant called her. Upon searching the bag, Abutaleb found a gun magazine. The officer also noticed that Henchley took possession of the hospital bag that contained Defendant's belongings. Before Henchley left, Abutaleb, with Henchley's implied permission, looked through the hospital bag's contents and found Cao's cellphone, Defendant's identification, and Defendant's wallet.

Officer Guerra was the officer who located Defendant's vehicle. As he was walking back to the hospital building, Defendant called out to him from a nearby ambulance that was waiting to transfer him to the Medical Center. Guerra went to the ambulance and where Defendant spoke to him. When Guerra explained to Defendant that they were investigating a shooting and proceeded to ask some identifying questions, Defendant stated that he had been robbed. Upon hearing this statement, Guerra asked Defendant about the event, and Defendant stated that he was robbed at gunpoint.

## II.     Discussion

Defendant argues that the searches of both his backpack and his hospital bag violated his Fourth Amendment rights, and the results should consequently be suppressed. He contends that the searches were completed without a warrant and that no exception to the Fourth Amendment warrant requirements apply. Additionally, Defendant argues that any statements he made after he was taken into custody should be suppressed because the statements were taken in violation of his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). The Court will address the Fourth Amendment arguments first, followed by the *Miranda* arguments.

A. Searches

Defendant argues that both the search of his backpack and the search of the hospital bag were warrantless searches that violated his Fourth Amendment rights. The Fourth Amendment protects "[the] right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Unless an exception applies, an officer, before conducting a search, must (1) have probable cause to believe that contraband or evidence of a crime will be found in a particular place and (2) obtain a warrant. *United States v. Rounds*, 749 F.3d 326, 338 (5th Cir. 2014). In sum, searches and seizures are deemed reasonable, and therefore lawful, when they are based on probable cause and executed pursuant to a warrant. *See id*; *see also Coolidge v. New Hampshire*, 403 U.S. 443, 449 (1971).

In the instant case, there are two separate searches that Defendant seeks to suppress. There is no dispute that the searches were warrantless. Instead, the dispute surrounds whether an exception to the Fourth Amendment's warrant requirement applies. The Government argues that the "consent exception" to the Fourth Amendment applies with respect to the backpack search.

"A search conducted pursuant to consent . . . remains one of the well-settled exceptions to the Fourth Amendment's warrant and probable-cause requirements. To rely on this exception, the government must prove, by a preponderance of the evidence, that the defendant voluntarily consented." *Rounds*, 749 F.3d at 338 (citing *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997)). "In order to satisfy the consent exception, the government must demonstrate that there was (1) effective consent, (2) given voluntarily, (3) by a party with actual or apparent authority." *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010). Only the third element is at issue in the present case.

Importantly, consent may come from a third party. *See United States v. Jenkins*, 45 F.3d 447, 451 (5th Cir. 1995) ("[T]he prosecution must show that either the defendant himself consented to the search or that consent was obtained from a third party that had the ability to furnish valid consent."). "To establish that a third party had apparent authority to consent . . . the government need demonstrate only that the officers reasonably believed that the third party was authorized to consent. *United States v. Gonzales*, 121 F.3d 928, 938 (5th Cir. 1997) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990). "[T]he validity of a search grounded in a third-party consent requires an intensely fact-specific inquiry." *United States v. Shelton*, 337 F.3d 529, 535 (5th Cir. 2003). "Existence of consent is determined based on the totality of the circumstances." *United States v. Freeman*, 482 F.3d 829, 831–32 (5th Cir. 2007).

The primary question with respect to each search is whether Henchley had authority to consent to the search. With respect to the backpack, this Court finds that Henchley had apparent authority to consent to the search, and therefore the search was not a violation of Defendant's Fourth Amendment rights. First, when Officer Abutaleb initially asked Henchley for her ID in Defendant's hospital room, Henchley reached into the backpack in order to locate her identification. Second, Officer Abutaleb, while taking Henchley's statement, asked if she had her phone in her possession to confirm the time that Defendant called her that day. Henchley responded that she had her phone and that it might be in the backpack. When Officer Abutaleb asked if she minded whether he searched the bag, she said "No." When Officer Abutaleb again asked if she was okay with him checking the bag, she responded affirmatively. Thus, she gave consent to search twice.

Defendant argues that Officer Abutaleb knew that Henchley's phone was not in the bag because he placed the phone next to the backpack in the storage area of his vehicle. As a result,

Defendant argues that Officer Abutaleb had no basis for believing that Henchley had authority to consent to the search of the backpack. The Court disagrees.

The totality of the circumstances makes clear that a reasonable officer would believe that Henchley had authority to consent to the search. It is true that Officer Abutaleb placed Henchley's phone next to the backpack when they initially entered his vehicle at the first hospital. It was not until they had arrived at the second hospital, however, that he obtained consent to search. It is apparent that neither Officer Abutaleb nor Henchley remembered that the phone was placed so that it was separate from the backpack.  It was also reasonable to assume that Henchley might have been referring to a different phone. Moreover, Henchley was the wife of the Defendant who had possession of the backpack and who explicitly gave consent to search it. Finally, Henchley herself seemed to believe that her phone may have been in the backpack, further indicating that she exercised control over the backpack. Taken together, the Court finds that Henchley had authority to consent to a search of the backpack. Therefore, the motion to suppress the search of the backpack is denied.

The Court now turns to the search of the hospital bag. This Court finds that the search of the hospital bag was also lawful because of the consent given to Abutaleb to search the hospital bag by Henchley. Abutaleb placed the backpack, the hospital bag, and Henchley's phone in the storage area in the rear of his vehicle in order to transport Henchley to the second hospital. Upon arriving at the second hospital, he began taking Henchley's statement. As mentioned above, Henchley stated that Defendant called her earlier in the day. In order to confirm this statement, Henchley authorized Abutaleb to look for her phone. While Abutaleb was looking for Henchley's phone, she granted him permission to search the backpack. After Abutaleb found Defendant's phone and showed it to Henchley, she said that she heard a "phone buzz" in the back of Abutaleb's

vehicle, which is where the hospital bag was located. In response, Abutaleb went back to the trunk and searched for the buzzing phone in the hospital bag. The totality of the circumstances makes clear that Abutaleb had permission from Henchley to search for the buzzing phone by searching the hospital bag, backpack, or otherwise. These facts also, taken together with the fact that Abutaleb previously saw Henchley demonstrate control over the hospital bag, make clear that Henchley had the ability to consent, and in fact did impliedly consent, to allowing Abutaleb to search the hospital bag. Therefore, the search of the hospital bag did not violate Defendant's Fourth Amendment rights and should not be suppressed.

Out of an abundance of caution, the Court will address the seizure of the hospital bag. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1987). "Those circumstances include situations '[w]here the initial intrusion that brings the police within plain view of such [evidence] is supported . . . by one of the recognized exceptions to the warrant requirement' such as . . . exigent-circumstances." *Arizona v. Hicks*, 480 U.S. 321, 326 (1987) (quoting *Coolidge*, 403 U.S. at 465). Put differently, the plain view exception applies so long as "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton v. California*, 496 U.S. 128, 136 (1990).

"[P]lain view alone is never enough to justify the warrantless seizure of evidence . . . . [N]o amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.'" *Coolidge*, 403 U.S. at 469. Exigent circumstances exist "when there is a genuine risk that officers or innocent bystanders will be endangered, that suspects will escape, or that evidence will be destroyed if entry is delayed until a warrant can be obtained." *United States v. Menchaca-Castruita*, 587 F.3d 283, 289–90 (5th Cir. 2009). Courts evaluate whether

circumstances are exigent by considering the many factors, including the degree of urgency involved and amount of time necessary to obtain a warrant, and the reasonable belief that the contraband is about to removed. *Id.*

The Court finds that the plain view exception applies with respect to the seizure of the hospital bag. The bag was plainly visible to the officers, as demonstrated by body cam footage. When officers arrived at Defendant's hospital room, they were investigating an alleged shooting in which the Defendant was a potential suspect and/or a potential victim. Therefore, their presence at Defendant's hospital room was justifiable. As a potential suspect in a shooting and robbery, it would be reasonable for the officers to conclude that contents of the bag might contain incriminating evidence. Finally, because the Defendant's wife took control of the hospital bag in preparation for Defendant being transported to another hospital, the necessity to prevent potential destruction of evidence created an exigent circumstance which justified seizure of the evidence.

Therefore, the seizure of the hospital bag did not violate Defendant's Fourth Amendment rights and should not be suppressed. The motion to suppress the search and seizure of the hospital bag is denied.

B. Statements

Additionally, Defendant argues that the statements he made to Officer Guerra while in the ambulance should be suppressed because he was in police custody and was never informed of his *Miranda* rights. *See Miranda*, 384 U.S. 436. The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Supreme Court has held that, in order to safeguard the privilege against self-incrimination, the Due Process Clause requires that incriminating statements obtained during a custodial

interrogation be inadmissible as evidence against a defendant unless the defendant was provided a full and effective warning of his rights. *See Miranda*, 384 U.S. at 444–45.

"*Miranda* warnings must be administered prior to 'custodial interrogation.'" *United States v. Lim*, 897 F.3d 673, 690 (5th Cir. 2018) (quoting *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (en banc)). "A suspect is in 'custody' for *Miranda* purposes when placed under formal arrest, or when a reasonable person in the suspect's situation would believe that his freedom of movement was restrained to the degree the law associates with formal arrest." *United States v. Maldonado*, 213 F. Supp. 2d 710, 717 (S.D. Tex. 2002) (quoting *Gonzales*, 121 F.3d at 939). A court determines whether an individual is in custody by looking to the "objective circumstances of the interrogation." *Wilson v. Cain*, 641 F.3d 96, 101 (5th Cir. 2011). The question before the Court is whether Defendant's statements were made during a custodial interrogation.

The Court finds that that the statements were not made during a custodial interrogation, and therefore the statements need not be suppressed. First, as the Government points out, Defendant was in the hospital, and later the ambulance, for medical purposes, not as part of a police-imposed restraint. *See United States v. Jamison*, 509 F.3d 623, 633 (4th Cir. 2007) ("Absent police-imposed restraint, there is not custody."). In fact, outside of the need for medical treatment, he was not restrained at all. As the *Jamison* court held, it is not a custodial interrogation simply because the police pose questions and restrict the "freedom of action" of a suspect if they do so "only to the degree to investigate the crime." *Id.*

Furthermore, the statements Defendant seeks to suppress were statements Defendant made in response to the identifying and informational questions that were being asked by Guerra *after* Defendant called Guerra over to him in the ambulance. It was a conversation Defendant initiated, and it was only after that Defendant told them that he was robbed that Guerra asked, "what

9

happened." Defendant was not being subjected to custodial interrogation at the time. The officers were asking investigatory questions in response to Defendant's claim that he was robbed. Therefore, the Court finds that officers were not required to inform Defendant of his *Miranda* rights at the time the Defendant made his statements, and consequently denies the motion to suppress.

### III.    Conclusion

For the foregoing reasons, the Court hereby denies Defendant's Motion to Suppress. (Doc. No. 14).

Signed at Houston, Texas, this 12th day of January, 2022.

Andrew S. Hanen
United States District Judge